THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 421 HEALTH AND WELFARE FUND, *et al.*; <br>     Plaintiffs, <br> v. <br><br> BRIAN TREMATORE PLUMBING & HEATING, INC. <br><br>     Defendant. | CIVIL ACTION NO. <br> 5:11-cv-00221-HL |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST BRIAN TREMATORE <u>PLUMBING & HEATING, INC.</u>

There is no genuine dispute that from July 1, 2007 through June 15, 2009, Brian Trematore Plumbing & Heating, Inc. ("Defendant") failed to make the full contractually required payments ("Contributions") to the Plaintiff Funds.[1] Defendant breached the collective bargaining agreement to which Defendant is a signatory, ignored the trust documents that govern the respective Funds, and violated Section 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C § 1145. In Defendant's 30(b)(6) deposition, Defendant's owner and President, Mr. J. Brian Trematore, freely acknowledged part of the debt Defendant owes:

    A.    I agree with the 117 hours.

    Q.    Okay. Has the company paid that deficiency?

    A.    To my knowledge, no.

---

[1] The Plaintiff Funds are Plumbers and Pipefitters Local No. 421 Health and Welfare Fund (the "Health and Welfare Fund"), Plumbers and Pipefitters Local No. 421 Pension Fund (the "Pension Fund"), Plumbers and Pipefitters of the Carolinas Pension Annuity Trust Fund (the "Annuity Fund"), Plumbers and Pipefitters Local Union No. 421 Joint Training Fund (the "Joint Training Fund"), Plumbers and Pipefitters Local Union No. 421 Labor Management Fund (the "Labor Fund"), and Plumbers and Pipefitters Local Union No. 421 Vacation Fund (the "Vacation Fund") (collectively, the "Funds").

> Q.     Why is that?
>
> A.     We're involved with a lawsuit.
>
> Q.     It's a debt you acknowledge owing, though, right?
>
> A.     We owe it. (Witness nods head.)

(30(b)(6) Deposition of Brian Trematore Plumbing & Heating, Inc. ("Trematore Dep.") at p. 76:14 - 22, attached hereto as Exhibit 1.)[2]  These frank admissions are only part of the picture: as will be shown below, Defendant cannot dispute that it owes the full amount of damages sought in Plaintiffs' Complaint.

Indeed, Defendant failed to pay full Contributions to the Funds because Defendant was under a couple of literal misunderstandings that Defendant believes absolves it of responsibility for delinquent contributions it has already admitted it owes.  Defendant's mistakes are: (1) that work Defendant performed at the North Hills Renaissance Marriot project in Raleigh, North Carolina during the period of July 1, 2007 through June 15, 2009 (the "Project"), was *not* covered work under the applicable collective bargaining agreement, and (2), that because North Carolina is a "right to work" state, the collective bargaining agreement to which Defendant assented allowed Defendant to hire non-union labor freely and therefore avoid entirely paying the contractually required fringe benefit contributions.  (Deposition of LaPadula Carlson + Co. ("LaPadula Dep.") at p. 83:8-14, attached hereto as Exhibit 2.)  Unfortunately, Defendant's mistakes guide its behavior.  Defendant was informed that it was wrong on both counts early as December 18, 2009.  (*See* Trematore Dep.

---

[2] The debt associated with the 117 hours Mr. Trematore referred to in Defendant's deposition is only a fraction of the total deficiency Defendant owes.  Nevertheless, this binding admission of a party opponent entitles the Funds to a judgment as a matter of law for at least this portion of the deficiency, a judgment including the mandatory forms of relief enumerated in ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), including reasonable attorneys' fees and costs.

Ex. 10.) For the reasons discussed herein, Defendant's work at the Project *is* covered work for which Contributions are owed, *regardless* of workers' union status.

Because of Defendant's refusal to pay the money it owes, Plaintiffs filed their Complaint in this case on June 2, 2011, to recover the full unpaid contributions due to the Funds, as well as interest, liquidated damages, and attorneys' fees and costs.[3] There can be no material dispute as to the facts central to the Plaintiffs' Complaint and the applicable law is unmistakably clear. Therefore, Plaintiffs respectfully request, pursuant to Fed. R. Civ. P. 56 and M.D. Ga. L. R. 56, that the Court enter summary judgment in favor of Plaintiffs on all counts alleged in their Complaint.

## FACTUAL BACKGROUND

**I.     The Plaintiffs**

The Funds hold assets for employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3) and are multi-employer plans pursuant to Section 3(37) of ERISA, 29 U.S.C. § 1002(37). (Declaration of Perry S. Howard, Jr. in Support of Plaintiffs' Motion for Summary Judgment Against Brian Trematore Plumbing & Heating, Inc. (hereinafter "Howard Decl.") ¶ 3). The Funds' trustees ("Trustees") exercise discretionary authority and control with respect to the management and disposition of the assets of the Funds. Accordingly, the Trustees are "fiduciaries" of the Funds within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21). (Howard Decl. ¶ 3.)

The Trustees, in the course of performing their duties, maintain records related to the management of the Funds, including records pertaining to Defendant. Those records, including the records described herein and provided to LaPadula Carlson + Co. for purposes of the agreed-upon

---

[3] In the event of a judgment in favor of Plaintiffs, Plaintiffs will promptly submit a supplemental calculation of interest and attorneys' fees and costs at a time convenient for the Court, and in accordance with M.D. Ga. L.R. 54.1 and 54.2.

procedures engagement performed in connection with this case, are records of the type regularly made and maintained by the Trustees and the Funds in the ordinary course of their business. (Howard Decl. ¶ 6; LaPadula Dep. at p. 37:5-8.)

## II.     Defendant's Contribution Obligations

Defendant, a New Jersey Corporation, performs large-scale plumbing and pipe fitting work. Defendant entered into a collective bargaining agreement between Plumbers and Pipefitters Local Union 421 and MCA of the Carolinas n/k/a Mid-Atlantic MCA (the "Collective Bargaining Agreement").  (Trematore Dep. Exs. 4 & 5.)  Defendant executed a letter of assent to be bound by the Collective Bargaining Agreement as a contributing employer. (Trematore Dep. Ex. 6.)

Employers bound by the Collective Bargaining Agreement, including Defendant, are obligated to pay fringe benefit contributions to the Funds at specific rates.  *All* employees engaged in the installation of all plumbing and pipe fitting systems are covered by the Collective Bargaining Agreement, *including* all non-union employees, and employers must make benefit payments to the Funds on their behalf.  (Collective Bargaining Agreement, Art. III, Section 3.1)

The Collective Bargaining Agreement broadly defines plumbing and pipe fitting work as follows:

> This Agreement covers the rates of pay, hours and working conditions of *all* employees engaged in the installation of all plumbing and/or pipefitting systems and component parts thereof, including fabrication, assembling erection, installation, testing, dismantling, repairing, reconditioning, adjusting, altering, servicing and handling, unloading, distributing, tying on and hoisting of all piping materials, *by any method*, including all hangers and supports of every description and all other work included in the trade jurisdiction of the United Association, as defined in the current Constitution of the United Association.

(Collective Bargaining Agreement, Article III, Section 3.1.)  The Collective Bargaining Agreement also includes "all other work included in the trade jurisdiction of the United Association, as defined

in the current Constitution of the United Association."  (hereinafter "UA Constitution," Tematore Dep. Ex. 7.)

Defendant was required to remit to Plaintiffs all Contributions due and owing the respective Funds, as well as written employer contribution reports detailing the Contributions, for any given month by the fifteenth day of the following month to the Funds' administrator, Core Management Resources Group, Inc., located in Macon, Georgia ("Core").  (Howard Decl. ¶ 5.)  In compliance with this contractual obligation, Defendant submitted employer contribution reports and partial Contributions payments to Core from July 2007 through October 2008.  (Trematore Dep. Ex. 8; Howard Decl. ¶ 5; Responses to Plaintiffs' First Requests for Admissions to Defendant Brian Trematore Plumbing & Heating, Inc. ("RFA") No. 7, attached hereto as Exhibit 3.)

The Funds' Trust Agreements incorporated into the Collective Bargaining Agreement are the governing documents for the administration of the Funds.  Among other provisions, the Trust Agreements set forth the powers of the Trustees, including the powers to establish a system for the uniform collection of contributions, to assess liquidated damages on any delinquent contributions due from employers, and to take steps at law or otherwise to enforce payment of delinquent contributions, liquidated damages, and the costs of any such action. (Howard Decl., Exs. 1-6.)

### III.  Delinquent Contributions and Collection

Pursuant to the Trust Agreements, the Trustees may initiate a payroll audit of an employer's records to determine whether an employer, such as Defendant, is making full and prompt payment of its Contributions to the Funds.  (Howard Decl. ¶ 16, Exs. 1-6.)  At the direction of the Trustees and in accordance with the Trust Agreements, the accounting firm LaPadula Carlson + Co. conducted a payroll audit of Defendant for the period of July 1, 2007 through June 15, 2009 in connection with work performed at the Project (the "Payroll Audit").  (Howard Decl. ¶ 17; LaPaula Dep. Ex. 8) The

Payroll Audit covering this period revealed that Defendant defaulted under the controlling documents by failing to pay to Plaintiffs all $82,110.09 in required contributions. (LaPadula Dep. Ex. 8.) Defendant also owes liquidated damages and interest on the delinquent contributions, as well as the Funds' reasonable attorneys' fees and costs for bringing this action. (ERISA § 515, 29 U.S.C. §§ 1145; ERISA § 502, 1132(g)(2); Collective Bargaining Agreement; Trust Agreements.) Despite repeated demands for payment of these delinquent contributions, Defendant has not made a single payment. Therefore, Plaintiffs were left with no choice but to file this lawsuit and, as a result, have incurred attorneys' fees and costs. As shown below, Defendant owes these delinquent amounts. As also shown below, the amounts Defendant owes should be awarded *on summary judgment*. As a matter of well-settled law, Defendant *cannot* create a genuine issue of material due to Defendant's own failure, despite mandatory ERISA requirements, to keep records that permit a determination of the benefits that are due for all employees for work covered by the Collective Bargaining Agreement.

## ARGUMENT AND CITATION TO AUTHORITY

**I.    Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), the Court should enter summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). When the moving party satisfies its initial burden of showing the absence of genuine fact issues, the non-moving party "may not rest upon the mere allegations or denials" in pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986); *Van T. Junkins & Assoc. v. U.S. Indus., Inc.*, 736 F.2d 656, 658 (11th Cir. 1984). Under these well-established principles, "'summary judgment is appropriate where the non-movant fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Johnson v. Fleet Fin., Inc.*, 4 F.3d 946, 948 (11th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). As demonstrated below, Defendant cannot sustain its burden of demonstrating that there are any genuine issues of material fact and Plaintiffs are entitled to judgment as a matter of law. Therefore, the Court should enter summary judgment in favor of Plaintiffs on all claims asserted in the Complaint.

**II.     Plaintiffs Are Entitled to Unpaid Contributions, Liquidated Damages, Interest, and Expenses of Collection, Including Attorneys' Fees, As a Matter of Law**

**A.     Defendant Admits it is Bound by the Collective Bargaining Agreement and the Trust Agreements**

Defendant cannot dispute that it is bound by the Collective Bargaining Agreement and the Trust Agreements. Defendant provided written, signed assent to the Collective Bargaining Agreement and made partial contributions payments to the Funds. (Trematore Dep. at pp. 48:7-49:7, Ex. 6 (letter of assent), 61:9-63:25, Ex. 8 (partial contributions).) Thus, Defendant manifested its assent to be bound to the Collective Bargaining Agreement in writing and through its actions. Defendant is therefore obligated Defendant to make Contributions to the Funds at the rates prescribed by the Collective Bargaining Agreement which was in effect throughout the entire period covered by the payroll audit. *United Paperworkers Intern. Union v. International Paper Co.*, 920 F.2d 852, 855 (11th Cir. 1991) ("[A]ll that is required to find the existence of a collective-bargaining agreement is conduct by the parties manifesting an intention to be bound."); *Trustees of Plumbers and Steamfitters Local Union No. 43 Health and Welfare Fund v. Crawford*, 573 F.Supp.2d 1023,

7

1027 -28 (E. D. Tenn. 2008) (holding delinquent employer's act of contributing to employee benefit funds was manifestation of employers' intent to be bound to signed collective bargaining agreement requiring contributions to those funds, even after the collective bargaining agreement, as written, had expired).

Additionally, as a matter of well-settled law, Defendant agreed to be bound by the Trust Agreements when it manifested its intent to be bound to the Collective Bargaining Agreement: "an employer who, pursuant to a collective bargaining agreement, makes contributions to an employee benefit trust fund governed by ERISA, is bound by the trust agreement for that fund, despite the fact that the trust agreement is not incorporated in the collective bargaining agreement." *Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co.*, 932 F.2d 1443, 1450 (11th Cir. 1991). *See also Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1494 (9th Cir. 1990) (holding that employer was bound to trust agreement that it did not sign and which was not incorporated in the collective bargaining agreement to which employer was a signatory).

**B.     All Amounts Defendant Owes are for Work Covered by the Collective Bargaining Agreement**

All work identified in the Payroll Audit is work covered by the Collective Bargaining Agreement. Defendant failed to pay full Contributions owed to the Funds because Defendant believed that a portion of its work at the Project was not work covered by the Collective Bargaining Agreement. (Trematore Dep. at pp. 42:19 – 43:16; LaPadula Dep. at p. 83:8-14.) The Collective Bargaining Agreement covers plumbing work *and* pipe fitting systems work by *all* workers, *regardless* of union status. (Collective Bargaining Agreement, Article III, Section 3.1.)[4]

---

[4]     By subcontracting and/or subletting any covered work to workers not employed by signatories to a United Association collective bargaining agreement, i.e. to non-union workers, Defendant breached the Collective Bargaining Agreement. (*See* Collective Bargaining Agreement, Art. XIX; Trematore Dep. at pp. 73:4-74:3, 90:11-24.)

8

Heating, Ventilating, and Air Conditioning ("HVAC") is covered work under the Collective Bargaining Agreement, Art. III, Section 3.1. and the UA Constitution.[5] LaPadula Carlson + Co., the accounting firm that performed the Payroll Audit, agrees: it testified that it stands by the findings made in the Payroll Audit, and that is stands by the conclusions as to the amounts Defendant owes the Funds as revealed by the Payroll Audit. (LaPadula Dep. p. 108:23 – 109:11.) Defendant testified that the work Defendant does is plumbing and HVAC work. (Trematore Dep. pp. 23-25.)

Defendant simply made a mistake in this case: it believed anything other than plumbing work was not covered work, and that because North Carolina is a "right to work state" that it was free to hire non-union labor, despite binding contractual obligations to the contrary. Illustrative of Defendant's misunderstanding is its written admission through counsel that "[t]he hours of work covered that are identified in Schedule II on Page 7 of the Audit Report (7,339.50 hours) for which Trematore did not make contributions to the Funds are for the non-plumbing related *HVAC work . . . .*" (emphasis added).[6] (Trematore Dep. Ex. 10.) Thus, Defendant has *admitted* that it is liable for

---

[5] As mentioned above, in addition to the scope of work as defined in the Collective Bargaining Agreement, Article III, Section 3.1 of the Collective Bargaining Agreement also incorporates by reference, as part of covered work, "all other work included in the trade jurisdiction of the United Association, as defined in the current Constitution of the United Association." The UA Constitution provides 50 enumerated categories of covered work, which fully encompass Defendant's work here. Illustrative categories of covered work include: "[t]he setting, erecting and piping of instruments, measuring devices, thermostatic controls, gauge boards, and other controls used in connection with power, heating, refrigeration, air conditioning, manufacturing, mining and industrial work[,]" "[a]ll piping, setting and hanging of all units and fixtures for air-conditioning, cooling heating, roof cooling, refrigerating, ice making, humidifying, dehumidifying and dehydrating by any method, and the charging, testing, and servicing of all work after completion," "[a]ll piping for power or heating purposes, either by water, air, steam, gas oil, chemicals, or any other method[,]" "[a]ll air piping of every description." (Trematore Dep., Ex. 7 at pp. 169, 171-72) (emphases added). Further, HVAC servicing is expressly contemplated by the Collect Bargaining Agreement in Article XX.

[6] This statement of Defendant's counsel is an admission of a party-opponent, and is specifically excluded from the definition of hearsay. F.R.E. 801(d)(2)(D) ("A statement is not hearsay if – [t]he statement is offered against the party and is a statement by the party's agent . . . concerning a matter within the scope of the agency . . . made during the existence of the relationship.").

9

the work identified in Schedule II of the Payroll Audit, as this HVAC work is covered work and Defendant admits it did not pay Contributions for this work. (Trematore Dep. at p. 85:22-25, Ex. 8; LaPadula Dep. Ex. 8.)

Additionally, the Payroll Audit identifies the work of Brian Kroll, one of Defendant's then-employees who performed work at the Project for Defendant, is also covered under the Collective Bargaining Agreement. There is no dispute that Mr. Kroll's work consisted of carpentry and clean-up work associated with the installation of plumbing and pipefitting systems at the Project. Specifically, Mr. Kroll's work primarily consisted of constructing what are known as isolation boxes for the pouring of concrete in connection with the creation of floor openings for the passing of pipes and ducts between floors. (*See* Trematore Dep. at pp. 78:6 - 79:6.) This work is covered "installation of pipefitting systems work" (*see* Collective Bargaining Agreement, Art. III, Section 3.1) and is also covered by the UA Constitution, and therefore the Collective Bargaining Agreement, as the UA Constitution covers "'[t]he laying out and cutting of all holes, chases and channels, the setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers, conduit and boxes, used in connection with the pipe fitting industry." (UA Constitution, at p. 172.) And clean-up is covered work under the Collective Bargaining Agreement. (*See* Trematore Dep. at pp. 31, 83.)

      **D.**    **Defendant's Failure Make Full Contributions in Accordance with the Collective Bargaining Agreement Violated Defendant's Obligations under ERISA § 515**

There is no genuine dispute that Defendant has failed to make all required Contributions to the Funds. Interestingly, Defendant itself has experience with not being paid and was candid about it, stating:

    Q.    Okay. And when people owe you money, you sue them, right?

> A. Yes.
>
> Q. And when they admit they owe you the money, you expect them to pay, don't you?
>
> A. Yes.

(Trematore Dep. at pp. 76:23 - 77:3.) So, Plaintiffs here are following Defendant's lead and pursuing the amounts they are owed.

The law here is undisputed: Defendant must pay delinquent contributions. ERISA § 515, 29 U.S.C. § 1145, provides that "[e]very employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

Defendant failed to meet this federal statutory obligation by failing to pay the full amount of Contributions owed to the Funds as revealed by Defendant's own admissions, and by the Payroll Audit. By failing to pay full Contributions, Defendant clearly violated ERISA § 515, 29 U.S.C. § 1145. Plaintiffs should be awarded summary judgment.

**E.   ERISA and the Funds' Governing Documents Provide for a Mandatory Award of Damages for Violation of Their Respective Provisions**

The law makes clear that, upon Defendant's violation of ERISA § 515, 29 U.S.C. § 1145 resulting from Defendant's failure to pay the full amount of Contributions owing to the Funds from July 1, 2007 through June 15, 2009, Plaintiffs are entitled to collect unpaid fringe benefit contributions and related damages pursuant to ERISA § 502(g)(2), 29 U.S.C. §§ 1132(g)(2). Such ERISA damages include interest on the unpaid contributions, liquidated damages, and reasonable attorney fees and costs of this action, including the audit fee and expenses. Defendant agreed to be bound by the terms of the Collective Bargaining Agreement, requiring it to fully contribute to the

11

Funds. Despite this valid and binding contract, Defendant failed to remit the full amount of its Contributions and dues during the period in question.

Where an employer fails to make contributions to employee benefit plans pursuant to a collective bargaining agreement, ERISA, as mentioned above, entitles the employee benefit plans to recover a number of remedies. *See* ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2). Among the goals of § 502(g) are the deterrence of ERISA contribution violations and prompt compensation for prevailing benefit plans. *Laborers' Pension Fund v. A & C Environmental Inc.*, 301 F.3d 768, 778 (7th Cir. 2002) ("Congress enacted section 515 because the failure of employers to make promised contributions imposes costs on plans that adversely affect beneficiaries."); *Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1103 (3rd Cir. 1996) ("Congress's purpose in enacting [ERISA] section 515 was to allow multiemployer welfare funds to rely upon the terms of collective bargaining agreements and plans as written, thus 'permit[ting] trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law . . . .'"); *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2nd Cir. 1990) ("[B]enefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations. For this reason, Congress placed employee benefit plans in a position superior to the original promisee, analogous to a holder in due course.") (internal citation omitted).

As shown above, there is no genuine dispute that the Complaint properly states a claim for unpaid and untimely Contributions pursuant to Section 502 of ERISA. There is no genuine dispute that Defendant assented to the Collective Bargaining Agreement, no genuine dispute that that Collective Bargaining Agreement bound Defendant to pay Contributions to the Funds, or that

12

Defendant failed to pay full Contributions to the Funds. Thus, ERISA § 515, 29 U.S.C. § 1145 was violated and the Collective Bargaining Agreement was breached.

Pursuant to ERISA § 502, 11 U.S.C. § 1132(g)(2), the Funds are therefore entitled to any and all unpaid contributions; interest on the unpaid contributions; an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the Contribution Procedures; reasonable attorneys' fees and costs of this action; and other such legal or equitable relief as the Court deems appropriate.

For the period of July 1, 2007 through June 15, 2009, Defendant owes a minimum of $82,110.09 in unpaid contributions only. (LaPadula Dep., Ex. 8.) Furthermore, interest has also accrued since the date of Defendant's delinquency. Finally, the Funds have incurred attorneys fees and costs in bringing and prosecuting this lawsuit, including a $7,567.00 cost for the Payroll Audit. (Howard Decl., ¶ 17, Ex. 11.)

Because this is a case brought under ERISA § 515, 29 U.S.C. § 1145 for delinquent contributions and because Defendant admits that it is delinquent and therefore violated ERISA § 515, 29 U.S.C. § 1145, the Funds are also entitled to a *mandatory* award of their reasonable attorneys' fees and costs incurred in this action:

> Because Plaintiffs are entitled to judgment, they are also entitled to attorney's fees. 29 U.S.C. § 1132(g)(2) ("In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan ... reasonable attorney's fees and costs of the action."). The mandatory language of § 1132(g)(2) ("shall award") is in clear contrast to the permissive language of § 1132(g)(1) ("the court in its discretion may allow a reasonable attorney's fee" in any action under ERISA other than those described in § 1132(g)(2)).

*Crawford*, 573 F. Supp. at 1038-39. As stated above, in the event of a judgment in favor of Plaintiffs, Plaintiffs will promptly submit a supplemental calculation of interest and attorneys' fees and costs at a time convenient for the Court, and in accordance with M.D. Ga. L.R. 54.1 and 54.2.

### III.   Defendant Cannot Present a Genuine Issue of Material Fact Based Upon its Own Failure to Maintain Records under ERISA § 209

Defendant has a clear legal duty to maintain adequate records under ERISA: "Except as provided by paragraph (2) every employer shall, in accordance with regulations prescribed by the Secretary, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." ERISA § 209, 29 U.S.C. § 1059(a)(1).  "The plain language of the statute clearly places a duty upon the employer to maintain records *that will permit a determination of when the benefits are due for employees* as well as the information necessary to enable the plan administrator to develop reports which are required by statute." *Combs v. King*, 764 F.2d 818, 823 (11th Cir. 1985) (emphasis added); *see also Michigan Laborers' Health Care Fund v. Grimaldi Concrete*, 30 F.3d 692, 695 (6th Cir. 1994) (same).

The reason for Defendant's duty to maintain adequate records here is important: while the Funds have the initial burden of proving a prima facie case for damages to be awarded, when an employer has violated its statutory duty to keep records adequate to show contributions owing for its beneficiaries,

> [t]he burden then *shifts to the employer* to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only *approximate*.

*Combs,* 764 F.2d at 827 (quoting *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687-88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)) (emphases added).  Upon a failure to maintain records, "an employer is liable for contributions on *all hours worked* during a period in which it has been demonstrated that *some covered work* was performed." *Grimaldi*, 30 F.3d at 697 (emphasis added). In other words, Defendant cannot benefit from its own failure to maintain adequate records.

14

Defendant has failed to maintain adequate records within the definition of *Combs*. The LaPadula firm testified that, in conducting the Payroll Audit, LaPadula did not receive full records from Defendant. (LaPadula Dep. at pp. 115:4 - 9.)  LaPadula further testified that, when adequate records are not available in this type of situation, the firm has to do its best to approximate what amounts are owed. (LaPadula Dep. at pp. 115:13 1 17.) As a result, here, LaPadula made its best approximations where it did not have complete records from Defendant. (LaPadula Dep. at pp. 116:6 - 14.)  Importantly, LaPadula also testified that it stands by the findings made in the Payroll Audit, and that is stands by the conclusions as to the amounts Defendant owes the Funds as revealed by the Payroll Audit.  (LaPadula Dep. at pp. 108:23 - 109:11.)

In support of LaPadula's testimony, there is no dispute that Defendant underpaid Contributions for a portion of the Payroll Audit covering work conducted from July 2007 through October 2008.  (Trematore Dep. at p. 76:14 - 22; LaPadula Dep. Ex. 8; RFA No. 12.)  This is a period in which Defendant was generating employer contribution reports and was submitting partial Contributions payments to the Funds. (*See* Trematore Dep. Ex. 8.)   Defendant fully admits underpaying Contribution for this period.  (Trematore Dep. at p. 76:14 - 22.)  Thus, Defendant has *admitted* that it has not kept records for that period "*that will permit a determination of when the benefits are due for employees . . . ." Combs*, 764 F.2d at 823, for this period of time.

For work performed after October 2008, Defendant, operating on its mistaken assumption that no Contributions were due to the Funds, stopped paying Contributions to the Funds *altogether*. Defendant generated *no* employer contribution reports detailing Contributions payments during this period of time.  Yet, the Payroll Audit revealed, and as Defendant admits, numerous workers at the Project were paid by Defendant for work conducted after October 2008, *see* RFA No. 9, and, as discussed above, these workers were performing covered work.  Thus, Defendant has clearly failed

15

to maintain adequate records "*that will permit a determination of when the benefits are due for employees . . . ." Combs*, 764 F.2d at 823, for this period of time.

Thus, under *Combs*, Defendant "assume[s] the burden of disproving the accuracy of the plaintiff's figures regarding the number of hours worked[,]" 764 F.2d at 821, and "cannot be heard to complain that the damages lack the precision of measurement that would be possible had [Defendant] kept records in accordance with [ERISA]." *Grimaldi*, 30 F.3d at 697 (internal quote omitted). Having the burden of disproving the accuracy of the Funds' damages figures shifted to it, Defendant cannot come forward with credible evidence that it was not performing covered work for the claimed period. The Payroll Audit reveals that Defendant was engaged in covered work during the underlying period. Accordingly, Defendant is liable for Contributions and related damages *as a matter of well-settled law* for *all work* captured in the Payroll Audit period, and Defendant may not quibble about the accuracy of the figures set forth by the Funds. *See Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333, 1339 (9th Cir. 1988) (holding that because delinquent employer violated its statutory duty under ERISA to keep accurate records and failed otherwise to come forward with evidence of the extent of covered work performed by masons, employee benefit trust funds were entitled *as a matter of law* to recover contributions for *all hours worked* by the masons during the period in which they were shown to have performed *some covered work* for the delinquent employer). The Court may award damages to the Funds here, even though the result be *only approximate*. *Combs*, 764 F.2d at 827.

## **CONCLUSION**

Because there are no genuine questions of material fact, and because Plaintiffs are entitled to judgment as a matter of law, Plaintiffs respectfully request that the Court grant their motion and enter summary judgment in Plaintiffs' favor on all claims asserted in the Complaint as set forth herein.

This 23rd day of May, 2012.

                                                                  Respectfully submitted,

                                                                   **PARKER HUDSON RAINER & DOBBS LLP**

                                                                   /s/ Brett S. Montroy
                                                                   Eric Jon Taylor
                                                                   Georgia Bar No. 699966
                                                                   Brett S. Montroy
                                                                   Georgia Bar No. 940485

1500 Marquis II Tower
285 Peachtree Center Avenue
Atlanta, Georgia  30303
(404) 523-5300
(404) 522-8409 Facsimile
Email:  ejt@phrd.com
        bsm@phrd.com                      Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST BRIAN TREMATORE PLUMBING & HEATING, INC.** with the Clerk of Court using the CM/ECF system which automatically sent email notification of such filing to the attorneys of record for the captioned case, as follows:

> James B. Ellington
> Brian S. Coursey
> HULL BARRETT, PC
> Post Office Box 1564
> Augusta, Georgia 30903

This 23rd day of May, 2012.

> /s/ Brett S. Montroy
> Brett S. Montroy

2087447_1