IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **PLUMBERS AND PIPEFITTERS UNION NO. 421 HEALTH AND WELFARE FUND,** *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>**BRIAN TREMATORE PLUMBING & HEATING, INC.**<br><br>    Defendant. | Civil Action No. 5:11-CV-221 |

**ORDER**

Before the Court is a Motion for Attorney's Fees filed by Plaintiffs Plumbers & Pipefitters Union No. 421 Health and Welfare Fund, *et al.* ("the Fund" or "Plaintiffs"). In its Motion, Plaintiffs ask for reasonable attorney's fees to be awarded under ERISA § 502(g)(2). Plaintiffs' Motion is analyzed below.

I.  **PROCEDURAL HISTORY**[1]

In June 2011, Plaintiffs, a Fund which holds assets for employee benefits under ERISA, filed this action against Defendant Brian Trematore Plumbing & Heating, Inc. ("Defendant") alleging that there were outstanding contributions that Defendant had failed to pay to the Fund for work completed on a certain

---

[1] The Court does not find it necessary at this point in the litigation to outline an exhaustive factual background of this case. The factual background was set out in its entirety in this Court's order on Plaintiffs' Motion for Summary Judgment. *See* Doc. 37.

construction project in Raleigh, North Carolina. The alleged deficiency was for a total of $82,110.09.

Plaintiffs moved for summary judgment in May 2012, alleging that the issue of the unpaid contributions should be resolved based on an application of the Collective Bargaining Agreement ("CBA") executed by the parties and the United Association ("UA") Constitution, which was referred to and incorporated by the CBA. Plaintiffs argued that the plain text of these documents demonstrated that Plaintiffs were entitled to fully recover the amount of unpaid contributions they sought, as well as other relief to which they claimed to be entitled under ERISA. Defendant disagreed with Plaintiffs' interpretation of the CBA and UA Constitution, arguing that the texts of these documents did not support requiring contributions for the work performed.

After review, the Court granted summary judgment in part and denied it in part. (Doc. 37.) The Court found that certain disputed work – specifically, Brian Kroll's construction of "box-outs", union members' performance of "dry" HVAC work, and non-union members from L&A Mechanical and CLP Resources completing covered work - fell within the text of the CBA and UA Constitution and was considered "covered" work that required contributions. However, the Court found that other disputed work - namely, clean-up work performed by Noza Construction and Brian Kroll - was not covered under the CBA or UA Constitution and contributions were not required. Based on these findings, the case proceeded to a bench trial on these narrow issues: (1) as a matter of fact, how

much of Kroll and Noza's work was clean-up work not covered under the CBA or UA Constitution, and (2) as a matter of law, did Defendant's records for Kroll and Noza meet the standard of sufficiency under ERISA § 209.

At the bench trial, Defendant admitted that there was not sufficient evidence to establish how many hours Brian Kroll spent building box-outs as compared to the hours he spent performing clean-up work. Therefore, without any evidence to determine the appropriate apportionment of covered versus non-covered work he performed, the Court found as a matter of law that all hours worked by Kroll on the construction project were to be considered covered hours. Thus, the total number of hours worked by Kroll required contributions from Defendant. As to Noza, the Court found that all hours worked by Noza employees were worked on clean-up duties, which is not covered work. This finding was reached based on direct testimony from Mr. Chris Leanzo, an on-site project manager. Based on Mr. Leanzo's testimony, the Court determined that none of the hours worked by Noza Construction required contributions from Defendant.

The Court ruled from the bench that Kroll's hours were covered work and Noza Construction's hours were uncovered work. Based on these legal conclusions, the parties were able to agree on all aspects of the amount of damages, with the exception of attorney's fees. The damages were calculated according to ERISA § 502(g)(2). Under this provision,

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of –
>
> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs in this action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Based on this statute, the damages on which the parties agreed were as follows: $47,449.00 in unpaid contributions, $13,278.30 in interest, and $13,278.30 in liquidated damages. This totals $74,005.60 in damages, excluding attorney's fees. The question of reasonable attorney's fees now falls to this Court.

    II.    **ATTORNEY'S FEES**

        a.  **Lodestar Approach**

Section § 502(g)(2)(D) of ERISA authorizes a prevailing plan that receives a judgment in its favor to receive an award of "reasonable attorney's fees and costs of the action." 29 U.S.C. § 1132(g). However, the statute does not define

4

what constitutes a "reasonable" fee. Without any direct statutory guidance from ERISA, the Court turns to the lodestar approach, which consists of multiplying the number of reasonable hours expended on the litigation by the reasonable hourly rate. Loos v. Club Paris, LLC, 731 F. Supp. 2d 1324, 1329 (M.D. Fla. 2010) (citing Burlington v. Daque, 505 U.S. 557, 559-60, 112 S. Ct. 2638 (1992)); see also United Auto. Workers Local 259 v. Metro Auto Center, 501 F.3d 283, 290 (3rd Cir. 2007) (applying the lodestar approach to determine attorney's fees under ERISA § 502(g)(2)). The Supreme Court of the United States has called this approach "[t]he most useful starting point for determining the amount of a reasonable fee ...." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983). The Court also described this calculation as "provid[ing] an objective basis on which to make an initial estimate of the value of a lawyer's services." Id.

### i. Reasonable Hourly Rate

The first step of the lodestar approach is to determine the reasonable hourly rate billed by the plaintiff's attorneys. To determine the reasonable hourly rate, the Court must ascertain "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The party that seeks attorney's fees bears the responsibility of producing evidence that will demonstrate that the requested rate is in line with prevailing market rates. Id. "The general rule is that the

5

'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." Scelta v. Delicatessen Support Servs., Inc., 203 F. Supp. 2d 1328, 1332 (M.D. Fla. 2002) (quoting Am. Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999)).

In this case, the case was initially filed in the Macon division of the Middle District of Georgia. Plaintiffs' counsel argues that Macon rates are not appropriate in this case because "ERISA is a complicated, technical statute" and "[e]xpertise in this area is required to adequately represent funds like the Plaintiffs". (Doc. 66, p. 4.) Plaintiffs' counsel suggests that Atlanta billing rates are more appropriate. For lead counsel, Mr. Eric Jon Taylor, the requested billing rate is $475.00 for 2010, $500.00 for 2011, $525.00 for 2012, and $580.00 for 2013. For co-counsel Mr. Brett Montroy, the suggested billing rates are $210.00 in 2011, $220.00 in 2013, and $230.00 in 2013.

Defendant argues that Atlanta billing rates are not justified. In support of its argument, Defendant submits the affidavit of Mr. Frank L. Butler, III (Doc. 67-1). In his affidavit, Mr. Butler states that he practices in a Macon firm that specializes in labor and employment law, including ERISA litigation. Based on this testimony, the Court finds that non-local counsel was not necessary to represent Plaintiffs' ERISA claim, and therefore, Atlanta billing rates are not justified for purposes of calculating attorney's fees.

The inquiry now turns to the appropriate Macon billing rates in a case of this nature. Plaintiffs' counsel did not submit any additional evidence about

6

appropriate billing rates aside from Mr. Taylor's own affidavit. Defendant did, however, provide evidence of appropriate fees. In Mr. Butler's, he testifies to what he believes to be reasonable fees for Mr. Taylor and Mr. Montroy in the Macon legal community taking into consideration Mr. Taylor's and Mr. Montroy's experience, reputation, and skills. Mr. Butler suggests a fee of between $380.00 and $395.00 per hour for Mr. Taylor and between $170.00 and $200.00 per hour for Mr. Montroy. Based on this evidence and on the Court's own judgment and experience, the Court finds the rates suggested by Mr. Butler to be reasonable and the Court will employ those rates in this case. Thus, the rate to be used for Mr. Taylor is $390.00 and the rate for Mr. Montroy is $190.00.

Mr. Butler's affidavit did not address the prevailing rate for paralegals in the relevant legal community. Plaintiffs' counsel suggests a billable hourly rate of between $160.00 and $180.00 per hour, but the Court finds this to be outside the range of reasonable rates in the Macon area. Based on careful consideration of Plaintiffs' motion and the Court's own expertise, judgment, and research into prevailing market rates, the Court finds that the appropriate paralegal rate is $75.00 per hour. *See* Broadcast Music, Inc. v. Northside Rivalry's LLC, 5:13-cv-36 (CAR), 2013 WL 3339037 at *4 (M.D. Ga. July 2, 2013) (Royal, J.) (finding a rate of $75.00 per hour to be appropriate for paralegals in Macon).

  ii. **Reasonable Hours**

The second step in the lodestar approach is to assess the reasonable number of hours expended. Hensley, 461 U.S. at 434, 103 S. Ct. at 1939. The

hours claimed by the party seeking fees must be properly documented. Loos, 731 F. Supp. 2d at 1330. Generalized statements of the hours worked are not sufficient for purposes of fee awards; instead, a party must submit proof of the hours dedicated to the litigation. Id. Additionally, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434, 103 S. Ct. at 1939.

In a case where the billing records are voluminous, the court is not required to examine each individual billing entry to determine reasonableness. Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994) (determining that in cases where records are voluminous "an hour-by-hour review is simply impractical and a waste of judicial resources"). Instead, in cases with extensive billing records, courts are authorized to employ across-the-board percentage cuts either in the number of hours claimed or the final lodestar figure if there is a need to reduce the amount of hours claimed by attorneys. Id.

In this case, Plaintiffs' counsel submits that lead counsel, Mr. Taylor, billed 207.20 hours on this litigation from the filing of the complaint through the trial. Co-counsel, Mr. Montroy, billed 547.2 hours on the matter and Plaintiffs' counsel's paralegals spent 33.0 hours on the litigation. Plaintiffs claim that these hours are reasonable and the total 787.6 hours should be fully compensated. Defendant raises several objections to the hours claimed by Plaintiffs' counsel. Defendant claims that the billing entries submitted by Plaintiffs' counsel contain

8

"redundant billing, vague time entries, block-billing, and billing for services that were clerical or unnecessary." (Doc. 67, p. 10.) The Court finds that Defendant's arguments do have some merit and finds that across-the-board reductions for these billing discrepancies is justified.

First, the Court finds it appropriate to reduce the overall hours submitted by Plaintiffs' counsel to compensate for clerical work that was billed by paralegals. "A court may award fees for the work of paralegals, but only to the extent they [they] perform work traditionally done by an attorney." SE Property Holdings, LLC v. 145, LLC, 10-00521-KD-B, 2012 WL 6681784 at *5 (S.D. Ala. Dec. 21, 2012) (quoting Scelta, 203 F. Supp. 2d at 1334 (internal quotations omitted)). Where this is not the case, paralegal work is viewed as falling within the category of unrecoverable overhead expenses. Scelta, 203 F. Supp. 2d at 1334. In this case, many of the billing entries submitted by paralegals are clerical in nature. Defendant submitted a list of objectionable billing entries that amounted to an alleged 32.8 hours of clerical work that was improperly billed by paralegals working on the case. (Doc. 69-3.) These entries include work descriptions such as "organize documents received from client" (Sept. 27, 2011); "prepare documents previously produced for counsel's review" (Dec. 16, 2011); and "prepare hearing notebook" (Feb. 7, 2013). These tasks are not traditionally done by an attorney, and therefore, they are not properly included in an award of attorney's fees. Thus, the paralegal hours shall be reduced by 50%.

9

Second, the Court finds than a 5% reduction is appropriate on the attorney's hours based on "block billing." "Block billing" occurs when an attorney lists all of the day's tasks on a case in a single entry and does not separate the tasks and the time spent working on those individual tasks as separate entries on billing records. Ceres Envtl. Servs, Inc. v. Colonel McCrary Trucking LLC, 476 Fed. App'x. 198, 203 (11th Cir. 2012). Examples of block billing are apparent in both Mr. Taylor's and Mr. Montroy's billing records. For example, on February 27, 2013, Mr. Taylor billed 6.6 hours for "lengthy review and analysis of all file documents; motions on summary judgment and motion to strike; outline and prepare arguments; conference with Mr. Howard re: same." On March 26, 2012, Mr. Montroy billed 7.9 hours and described his tasks as "prepare for deposition of Defendant; telephone conference with audit firm; strategy conference with CEE; travel to and attend deposition of Defendant." On May 8, 2013, he billed 9 hours for "extensive analysis of damages in various scenarios of trial and settlement; review trust agreements for all six Plaintiff funds re: interest calculations; calculate same allocate unpaid contributions to all six funds using rates of contribution per man-hour worked; conference with EJT re: same." These entries are improper and warrant an across-the-board percentage cut.

Based on the reasoning above, the total hours claimed by Plaintiffs' counsel must be reduced. Mr. Taylor originally claimed 207.20 hours, Mr. Montroy claimed 547.20 hours, and paralegals claimed 33.20 hours. A 50% reduction in the paralegal's hours based on the improper inclusion of clerical

work reduces the hours of the paralegal from 33.20 to 16.6 hours. A 5% reduction for block billing, which applies only to Mr. Taylor and Mr. Montroy, brings the amount properly billed to 196.84 for Mr. Taylor and 519.84 for Mr. Montroy.

Based on the rates and hours set out above, the amount of attorney's fees using the lodestar approach is $76,767.60 for Mr. Taylor (196.84 hours x $390), $98,769.60 for Mr. Montroy (519.84 hours x $190), and $1,245.00 for paralegal hours (16.6 hours x $75.00). Thus, the total amount of fees under the lodestar approach is $176,782.20.

### iii. Overall Reduction

The Supreme Court has determined that there are times when the lodestar calculation must be reduced so that the award to the attorneys in a case can be properly considered a "reasonable" fee. Specifically, the Court has stated that

> [t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upwards or downward, including the important factor of the 'results obtained.' This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief.

Hensley, 461 U.S. at 434, 103 S. Ct. at 1940. In this case, Defendant argues that Plaintiffs should be subject to an across-the-board percentage cut to account for limited success in the case. Defendant claims that Plaintiffs' counsel is seeking to be fully compensated despite the fact that Plaintiffs did not prevail on all aspects of their claim. Defendants point out that Plaintiffs' claim for contributions for

clean-up work did not prevail, and therefore, Defendant argues that the amount of attorney's fees awarded by the Court should be reduced so that the award of fees is proportional to the monetary judgment awarded to Plaintiffs for unpaid contributions. In response, Plaintiffs claim that this type of percentage reduction based on proportionality does not apply in ERISA cases. For support, Plaintiffs cite to <u>United Auto. Workers Local 259 v. Metro Auto Center</u>, 501 F.3d 283 (3rd Cir. 2007), which rejects a proportionality argument under ERISA § 502(g)(2), determining that there is no ratio of reasonability to which fees and damages must conform.[2]

    This Court finds it unnecessary to reach to the issue of what role proportionality plays in the calculation of attorney's fees under ERISA. The Court, based on its judgment and experience, finds that no reduction is necessary in this case based on proportionality or any other consideration. The $176,782.20 figure calculated using the lodestar approach is reasonable and appropriate based on the hours spent on this case, the success achieved, and the complex nature of ERISA litigation. Thus, the Court finds no reason to reduce the lodestar amount by an across-the-board percentage.

    b. **Expenses**

    In addition to attorney's fees, a prevailing party is entitled to be reimbursed for reasonable expenses of litigation. The Eleventh Circuit has held that

---

[2] It does not appear that the Eleventh Circuit has issued an opinion addressing what role, if any, proportionality should play in an award of attorney's fees under ERISA § 502(g)(2).

"[r]easonable attorneys' fees ... must include reasonable expenses … as equally vital components of the cost of litigation." <u>Dowdell v. City of Apopka</u>, 698 F.2d 1181, 1190 (11th Cir. 1983). Thus, all reasonable expenses incurred through the litigation process, with the exception of routine office overhead, are recoverable.

In this case, the Court finds the expenses claimed by Plaintiffs' counsel to be, for the most part, reasonable. The expenses were mostly incurred on travel associated with the litigation, copying costs, and transcript fees. The one objectionable item that does not qualify as a nontaxable expense is online research fees. Computer research is generally considered part of attorney's fees rather than costs. <u>Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago</u>, 38 F.3d 1429, 1440 (7th Cir. 1994). Because computer research constitutes part of attorney's fees, entitlement to these fees must be proven by the requesting party. Just as Plaintiffs had to establish entitlement to attorney's fees, they must also demonstrate that they are entitled to computer research costs. In this case, the records submitted to the Court do not provide sufficient information to determine the reasonableness of these research charges, and thus, the request to claim these charges as nontaxable expenses is denied. For this reason, $154.47 spent on Lexis fees shall be deducted from the total of nontaxable expenses to which Plaintiffs are entitled.

Plaintiffs initially requested $4,606.83 in expenses. After deducting $154.47 on impermissible online research fees, $4,452.36 is the resulting amount that is properly claimed by Plaintiffs in expenses.

III.   **CONCLUSION**

Based on the reasoning set out above, the Court finds that Plaintiffs' Motion for Attorney's Fees shall be granted. Plaintiffs are awarded $176,782.20 in fees and $4,452.36 in expenses, for a total fee award of $181,234.56. This amount shall be added to the amount of damages agreed to by the parties and ordered by the Court from the bench in the amount of $74,005.60. Final judgment shall be entered in this case in favor of Plaintiffs in the amount of $255,240.16.

**SO ORDERED**, this 22nd day of July, 2013.

*/s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

ebrs